Judge Simpson
delivered the opinion of the Court.
In 1816, Samuel Alexander was appointed the guardian of Robert K. Means, Young J. Means, and Samuel E. Means, and executed a guardian’s bond with William Iloxie and Jacob Brunk as his sureties.
Jacob Brunk one of the sureties died in 1818, and his son Noah Brunk, who was his only child and heir at Jfiw, immediately after his death administered upon his estate. .Jacob Brunk at the time of his death was the owner of a tract of land, and some slaves and personal estate, all of which came to the possession of his son Noah Brunk; who as administrator made out and returned an inventory of the personal estate, and two slaves, which was duty recorded within a few months after his appointment as administrator.
In 1828 Noah Brunk conveyed to a trustee for the benefit of his vWe and children, all his property, consisting of the land and slaves derived from his father, and such other property as he had himself acquired.
In 1829, Robert K. Means having arrived at full age, commenced a suit in chancery, in his own name, and in the names of his two brothers, who were still infants, as their next friend, against Samuel Alexander their guardian, and William Hoxie one of his sureties, and Noah Brunk as the administrator of Jacob Brunk, the other surety in the guardian’s bond. During the pendency of that suit, Noah Brunk filed an answer in which he alleged that at the time the complainants exhibited their bill, and also at the time of filing his answer, he had no assets in his hands belonging to the estate of Jacob Brunk, having long before that time, fully administered and settled up the estate.
The allegation of the bill in this case.
In 1833 a decree was rendered in that suit, from which the following is a substantial extract: “The defendants, Samuel Alexander and William Hoxie, are decreed and ordered to pay the complainant Robert K. Means, the sum of $775 37 cents, with interest from the date of the decree. To the complainant, Young J. Means the sum of $775 37 cents and to the complainant Samuel E. Means, the sum of $382 47 with like interest on both the last mentioned sums. And it appearing to the Court that the defendant Noah Brunk hath no assets in his hands belonging to the estate of Jacob Brunk, deceased, it is decreed and ordered that in default of payment of all or any part of the above mentioned sums, by the defendants Alexander and Hoxie, then and in that case, should assets hereafter come io the hands of Noah Brunk, administrator, as aforesaid, that said administrator pay to the complainants the aforesaid sums respectively, or so much thereof as may remain unpaid, should assets come to his hands sufficient for that purpose.”
In 1847, Young J. Means and Samuel Means, together with Marion Means, the only child and heir at law of Robert K. Means, who had died in the mean time, brought this suit in chancery, and allege in their bill, that an execution issued upon the foregoing decree, and was returned “no property found,” and that the money decreed has never been paid, and cannot not be coerced from Alexander and Hoxie, both of them being insolvent. They also allege that Noah Brunk obtained by descent from his father Jacob Brunk as his heir at law, a tract of land containing two hundred and fifty acres, being the same conveyed by him in trust for the benefit of his wife and children, and that he received as the administrator of his father, several slaves and a considerable personal estate, which were assets in his hands, and had not been legally administered at the time he filed his answer in the former suit, denying that there were any assets in his hands; that his answer was false and fraudulent, and he had by his false represen *216 tations, and his suppression of the truth in relation to the estate in his hands as administrator, fraudulently procured a decree to be rendered absolving him from liability, except as to assets that might afterwards come to his hands. They therefore prayed that the former decree might be overruled and vacated, and a decree rendered against him for the payment of the sums therein mentioned out of the assets in his hands, and that the tract of land that he acquired by descent from his father might be -also subjected to the payment of their demands.
Defendant Bnuik’s answer.
Decree of the 'Circuit Court.
They exhibit in their bill, a copy of the inventory that he had made as administrator, and allege that the female slave Tiller therein mentioned, had since that time given birth to several children; that the deed of trust made by Noah Brunk for .the benefit of his wife and children, which embraced the slaves as well as the land, was merely voluntary and fraudulent against his creditors, and that they had only discovered the facts relied upon by them, and which established the fraud of said Brunks in the procurement of said decree, a short time before they commenced their suit.
The defendant Brunk in his answer, denies all fraud, relies upon the statute of limitations, the lapse of time, the staleness of the claim, and the laches of the complainants. He fails however to give a very satisfactory account of his administration of the assets which had come to his hands. He admits that the female slave Tiller is the mother of the other slaves as stated by the complainants, and that she belonged to his father Jacob Brunk, but attempts to set up claim to her, upon the ground that as administrator he had paid debts against his intestate, to the full value of the slave, and had on that account a right to retain her as his own; he has however introduced no proof to sustain this claim.
The Circuit Court dismissed the bill, so far as it sought to subject the land which had descended to Noah Brunk to the payment of the complainants demands, but rendered a decree, directing a sale of the *217 filavcs to be made for that purpose. To that decree Trunk ^ objects and has prosecuted a writ of error to reverse it. And the other parties also object to the decree, because it does not subject the land to sale for the payment of their demands, and assign cross errors.
The'heir at iatv cannot .maintain a suit for a personal demand due to his intestate -ancestor— the right belongs to the administrator.
Tao statute of limitations of J838 bars anyao tion against the surety of a guardian after five years shall hav6 elapsed after the ward arrives at full age, and the administrator of the surety may avail himself of that bar.
If the decree were right in every other respect, it is clearly ei'roneous, in one particular. Marion White cannot maintain a suit in his own name for the money previously decreed to his father, upon the sole ground that he is the heir at law. The right to-the money -upon the death of Robert K. Means vested in his'personal representative, and not in the heir-at law. If in any state of caso, the heir at law could maintain a suit in that character, he would have to -make the personal-representative a party, and assign some cause tha-t made it necessary for him to bring the suit in his awn •name, which he has not done in the'.present case.
The main question however, is in relation to-the operation of the statute of limitations, and the effect -of time upon the relief asked for in the bill.
So far as the object of the bill is either to carry into effect the former decree, or to obtain another decree against Trunk as heir at law, 1o subject the real estate ■in his hands to the payment-of the -sums of ..money due to the complainants, he is clearly entitled to the .protection of the statute of limitations.
Ills ancestor Jacob Trunk, was only liable as surety. Under the act of 1838 (3 Stat. Law, 558,) sureties are •discharged from liability on judgments, when seven years shall have elapsed without execution upon the judgment; and from liability on a guardian’s bond, when five years shall have elapsed without suit, after the youngest of the wards has attained full age. The executor or administrator of the surety, or h,is heir at law, can rely upon the same bar where the suit is ■brought'after the death of the surety.
The statute of limitations of 1838 applies as well to decrees in chancery, as judgments at law
Sureties in a judgment are sureties in the note upon which Ihejudgm’ntwas obtained: (Bray vs Howard, 7 B. Monroe, 489) Sureties in a decree means the same thing, and after the lapse of seven years the surety 'in a decree is released where ¡no execution issues for that period.
No suit on a' guardian bond agninst a surety alter five years from the time of the ward arriving at lull age.
The statute does not expressly embrace decrees in chancery, but as a general rule, a court of chancery adopts the legal limitation, and applies the statutory bar. Courts of equity aro governed by the principle, that whenever the legislature prescribes a limit, within which a legal remedy must be asserted, equity will, in analagous cases, consider equitable rights as barred by the same limitation. In consequence of this principle, equitable proceedings are not in terms embraced by the statutes upon this subject, it being unnecessary to do so ; but they are left to the operation of the well established rules that regulate and govern courts of equity in the application of the legal bar.
Sureties in a judgment, are the sureties in the note or obligation upon which the judgment was rendered; Bray vs Howard, (7 B. Monroe, 489.) Sureties in a decree must therefore mean the same thing. When seven-years shall have elapsed after the return, of one execution before another issues, the statute applies as well as where Lhe same period shall have elapsed after the rendition -of the judgment before any. execution shall have issued; Brayy s Howard, (supra.)
More than seven years had elapsed without any execution having issued upon the decree of 1833, after the return of the first one. As the surety in a judgment upon a guardian’s bond would be discharged, on that ground from further liability upon the judgment, the surety in the bond upon which the decree was rendered must also be considered as discharged from all liability 'on the decree, and any attempt to carry it into effect by bill or otherwise must fail, in consequence of the application. of the legal bar.
And as a period of ten years 'had elapsed after the youngest of the wards had attained full age before the present suit was commenced, a suit upon the guardian’s bond itself was barred as to the surety. If the heir of the surety can be rendered liable on account of having received assets by descent from his ancestor, it must, be on the ground that he remained still liable, when this *219 suit was instituted. No previous suit had been brought against him a3 heir. If the bar would apply to a suit brought against him for the sole purpose of rendering him liable as heir on the bond executed by his ancestor, it. would also apply to so much of the present suit as seeks to subject him to the same liability. There can be no doubt that a suit against him, if commenced when the present suit was, merely for the purpose of obtaining a judgment or decree against him as heir, would have been barred by the statute of limitations. So far therefore as the present suit liad that object in view, the bar applied, and it could not be sustained. Consequently the decree disini-ssiug that part of the bill is correct.
A deeiee cannot be set aside lorfraud wiserw the-only fraud alleged is in swearing to a falsehood in, the aiiá we rB
As the suit was barred, so far as its object way cither to enforce the decree previously rendered, or to obtain another decree against Brunk as heir at law, the only remaining question is, whether a case has been presented by the complainant?, which entitled them upon the ground of fraud, to have such a decree rendered in their favor, as upon a full exhibition of all the facts-, which now appear, if made in the former suit, they would then have had a right to.
The only fraud with which Brunk is charged, in. the procurement of the decree in the previous suit, consists in the false statements contained in his answer. Something moréis necessary to constitute a decree- fraudulent, that is, a decree that has been obtained by fraud* than false allegations in the pleadings regular!'/ filed in the cause. ¡Wither parí) relies upon tile-statements made in the plead mu;.* by his antagonist, hue so far as he is able, c- vincos their f-il-rity and repels them by-proof. The presumption cannot, bo indulged that he confides in such statements, particularly ay it is incumbent upon him to disprove thorn no far as they conflict with his intcro-d. When a party to a suit, by some act or declaration, out of the record, lulls his opponent into-a-false security, or by any other means deceives him,, and thereby obtains a judgment or decree to his preju *220 dice, the judgment or decree thus obtained is fraudulbnt, and may be impeached upon that ground. But there is nothing of that' kind in this case, nor any thing to sustain the allegation of fraud in obtaining the decree, except’the falsity of the statements contained- in the answer.
¿To authorizes* bul of review upon the ground of discovery of* testimony to points at issue in the first suit, it should appear that the newly discovered testimony was of a conclusive character, and could not have been discovered by reasonable vigilance.
If the bill in this case can be maintained at a]],- it must be as a'billof review upon the discovery of testimony material to the matters in issue in the former suit, since the decree was rendered. It statements in the pleadings inconsistent with, the proof, would authorize a party to impeach a decree for fraud, a bill for that purpose might be brought'in every case where a party after a suit had been determined, discovered evh dence tending to disprove any of the allegations in the pleadings upon which the decree was founded, a practice that would if established,- lead to interminable litigation.
To maintain a bill of review upon the ground of the discovery of evidence, as to a matter that was in issue between the parties, it must not only appear that the testimony so discovered is of a conclusive character, but also that it could not have been discovered by the exercise of reasonable diligence during the pendency,of the former suit. Supineness and negligence are not countenanced in a court of equity. The parties litigant are required to exercise due and reasonable vigilance in the preparation of their suits, and if they fail to do it, the’Chancellor will not relieve them from the consequences resulting from their own culpable negligence. The evidence necessary to establish the fact that assets had come to the hands of Noah Brunk as administra1 tor, was accessible t’o any person who would have used-’ reasonable industry for its procurement* An inventory was upon record, containing the personal estate, and two of the slaves, that had come to the hands of the administrator. The parties all resided in the same county where Jacob Brunk was domiciled at the time of his death. The estate that belonged to him was *221 known to all of his neighbors. All the facts now proved, could have been more fully established at that time, when they were fresh in the recollections of many persons. Besides, information was communicated to Robert K. Means, one of the original complainants, by an individual who resided in the immediate neighborhood of 'Noah Brunk, of the intention of the latter to avoid his liability upon the guardian’s bond, by a transfer of his property. This information should have aroused his vigilance, and it deprives Mm of any reasonable excuse for his unaccountable omission to investigate the truth of the statements contained in the answer of the administrator.
But it is contended that the two other complainants who were infants, should not be prejudiced in their rights by the negligence of the other complainant, although he managed the suit, not only for himself, but for them also, as their next friend. The policy of establishing such a doctrine may well be doubted. But we will waive this question for the present as it is not necessarily involved in the decision of this case.
If it be assumed that the infant complainants might after they arrived at full age, maintain a bill of .review upon the ground that their rights had been prejudiced by the neglect of the prochein amy and that testimony had been discovered by them of a character - which would authorize them to ask for a re-investigation of the same matters, previously put in issue, yet they could only do it by making it appear that they had exhibited their bill, as soon as by the exorcise of reasonable diligence after they come of full age they could have discovered the testimony relied upon. Here the discovery was not made nor the suit instituted, until fourteen years had elapsed after the former decree was-rendered, although the youngest of the infants had been of full age upwards of ten years. No attempt has been made to account for this unreasonable delay. It is not even alleged that any efforts were previously made to procure the testimony discovered at so late a *222 period. The parties rested in wilful ignorance, and must abide the consequences of their own laches. If adults are only allowed the time that elapses during the pendency of a suit lo procure that evidence in their favor, which can be obtained by reasonable diligence, ■certainly infant litigants occupying the attitude of complainants, if they are to be allowed time, after they arrive at age to litigate the same matters over again, by bill of review,-or an original bill in the nature of a bill of review', upon the ground that their interests were negligently attended to by the person acting as their next friend, should be . required to bring their suit for that purpose within a reasonable time, and as soon as by proper diligence, they could procure the testimony necessary to sustain i-t. -This was not done in the ■ present case.
McLarniug {or plaintiff; B, Sp J. Monroe, Mordicad ¿f Reed, for defendants.
We think that time and laches liave deprived the complainants of all right to relief against the administrator and heir of the surety in the guardian’s bond, and that the decree in the Court below in their favor is erroneous.
Wherefore said decree is reversed, and cause remanded with directions to dismiss the complainant’s bill with costs.