CASE 38—PETITION EQUITY—JUNE 2.

# Ellis v. Kelly.

APPEAL FROM HENRY CIRCUIT COURT.

1. MONEY COERCED BY A JUDGMENT OBTAINED BY FRAUD MAY BE RECOVERED BACK AGAIN AFTER THE DISCOVERY OF THE FRAUD.

The holder of a note, executed in the firm-name by one member of a firm in payment of his own individual debt, falsely represented to the other members of the firm that the note was executed for money loaned to the firm by him, and thereby induced them to permit him to recover judgment against them for the note. After the judgment was replevied one of the members of the firm enjoined its collection on the alleged ground that it was not a firm-debt, and called on the plaintiff in the judgment to answer and disclose whether said note was executed by said firm in the prosecution of the firm business, etc. He answered that the note was executed for money loaned by him to the firm, etc., and the injunction was dissolved with damages. After the dissolution of his injunction, and after payment had been coerced from him, this same member of the firm discovered that he could establish the fact that the note was not executed for money loaned to the firm, but in payment of an individual debt of one of the partners, and that this fact was known to and concealed by the party to whom the note was executed; and the money which was thus fraudulently coerced from him is

Ellis v. Kelly.

recovered again by him in this action in equity, instituted less than one year after the discovery and less than ten years after the perpetration of the fraud.

2. *Money fraudulently coerced by judgment,* and paid after being replevied, can be recovered in equity without awarding a new trial of the common law action, or setting aside judgment therein. (West v. Kirby, 4 J. J. Marshall, 56.)

3. When a party by some act or declaration out of the record lulls his opponent into a false security, or by any other means deceives him, *and thereby obtains a judgment* or decree to his prejudice, the judgment or decree thus obtained is fraudulent, and may be impeached on that ground. (Brunk v. Means, &c., 11 B. Monroe, 214.)

GEORGE C. DRANE,
JOHN M. HARLAN, } . . . . . . . . For Appellant,

CITED

5 Monroe, 424, Jones v. Chappell.

JOHN RODMAN, . . }
GEO. KILPATRICK, } . . . . . . . . For Appellee,

CITED

11 B. Monroe, 219, Brunk v. Means, &c.
Civil Code, sections 14, 373.
1 Bibb, 347, Reed v. Hatcher.
4 Bibb, 85, McIlvoy v. Speed.
7 T. R. 456, Greathead v. Bromley.
1 J. J. Marshall, 271.      4 Dana, 433.

JUDGE PETERS DELIVERED THE OPINION OF THE COURT.

On the 14th of March, 1867, appellant filed his petition in equity in the court below, alleging substantially that appellee brought an action in the Henry Circuit Court against himself, J. W. Brannin, Daniel Brannin, and W. S. Pryor, on a note purporting to have been executed by Brannin, Pryor & Co. to him for $1,387.74, on the 3d of March, 1857, and due one day thereafter, credited by $237.70 December 6, 1858, upon which judgment was rendered against said defendants at the April term, 1859, of said court, subject to the credit aforesaid; that execution issued on said judgment and was levied on his property, and on the 1st of July, 1859, he replevied the same,

Ellis v. Kelly.

with J. W. Brannin and W. S. Pryor, co-defendants therein, as his sureties, and makes a transcript of that action a part of this suit.

He further alleges that when said note was executed he was a member of a mercantile and manufacturing firm, doing business in Newcastle, under the firm-name of Brannin, Pryor & Co., composed of himself, Daniel Brannin, J. W. Brannin, and Wm. S. Pryor, the financial affairs of which were managed almost exclusively by J. W. Brannin, the other partners having but little knowledge in relation thereto; and that when said action was brought on said note he did not know that the same was not a valid subsisting debt against said firm; but having subsequently learned that it was not such, and being aware that appellee knew whether the note had been executed in the business and for the benefit of the firm, he, in September, 1859, filed his petition in equity enjoining him from proceeding to collect the same, and calling on him to answer and disclose whether said note was executed by said firm in the prosecution of their firm-business; and although he then knew, as has since been disclosed, that the note was not executed for a firm-debt, and in fact had no connection with its business, he stated in his answer in that suit that the note was executed for money he had loaned the firm, and each one of its members had told him it was all right and would be paid, which he knew was not true, and knew that it had been executed by J. W. Brannin for an individual debt of his own, not in any way connected with the business of the firm, and in which the firm had not the remotest interest, and without the knowledge of the other members thereof, or either of them.

Having no personal knowledge on the subject himself, and not knowing, after he saw appellant's answer, any one by whom he could sustain the allegations of his petition, his injunction was dissolved, with damages amounting to one hundred and forty dollars, and his petition dismissed. He, however,

appealed, and while his appeal was pending an agreement was made with appellee by which he undertook to pay and has paid to him the one fourth of such debt, interest, and costs incurred in the several suits growing out of said matter, amounting in the aggregate to the sum of $————, on a debt which he never owed, and which appellee knew he did not owe, but never disclosed the fact until within less than one year before this suit was instituted; that within that period he has said to various persons that he knew all the time it was not the debt of said firm, and that the firm was not bound for it; that he had concealed the fact from the partners not bound for fear he would have some difficulty in collecting his money; and in an answer recently sworn to and filed in a suit in the Louisville Chancery Court he stated that J. W. Brannin had purchased a farm of B. H. Dale, who was at the time indebted to him; that appellee was pressing Dale for payment, who, being then without the means to discharge the demand, appealed to Brannin, who was owing him for his land, to arrange with Kelly the debt, when it was agreed between Kelly and J. W. Brannin that Brannin should execute a note in the name of the said firm to Kelly for his debt against Dale, and under that agreement the note sued on was executed, Brannin signing the firm-name to it, to pay a debt he individually owed to Dale, and thereby discharge the debt Dale owed Kelly. And appellant now seeks a judgment against appellee for the money he was compelled to pay him by his false statements about and fraudulent concealment of the true character of the transaction. The petition was dismissed by the court below, and the case is now here by appeal.

After his demurrer to the petition was overruled appellee answered, denying any knowledge of the business or arrangements of the firm of Brannin, Pryor & Co. or of their books, and then says he held the claim against Dale, which was perfectly good, as it was in execution and had been levied on his

property, and the money would have been made without doubt in a few weeks if Brannin, Pryor & Co. had not purchased it of him; that he made nothing by the sale of the debt to them, having taken their note for the amount of his debt, with Daniel Brannin as surety; that he knew nothing about the business of the firm of Brannin, Pryor & Co.; that he had no interest in it, and sold his claim on Dale to them, as he had a right to do, and denies that he ever knew the note executed to him for said debt on Dale was of such a character as not to bind the firm; denies that he knew that it was a matter in which J. W. Brannin was individually and alone interested; says he could not tell or anticipate what either said firm or J. W. Brannin, in his individual capacity, wanted with the demand against Dale. It did not concern him. He was neither the guardian of the firm nor of J. W. Brannin; and if any wrong was done to any member of the firm it was done by one of their partners and not by him. Denies that he at any time ever said to any one that he knew J. W. Brannin purchased the debt on Dale for his own benefit, or that he ever stated on oath that it was not the firm debt; or that in his answer to appellant's suit in equity against him, or in any other way, he ever failed and refused to disclose any fact within his knowledge. That he does not know whether all the members of said firm concurred in the execution of the note of Brannin, Pryor & Co. to defendant, but says he does know that appellant failed to answer and make defense when he sued him on the note, although the summons was executed on him; that before he sold the claim on Dale he had loaned divers sums of money to the firm, and J. W. Brannin invariably transacted the business and executed the notes of the firm therefor; and he denies that it was agreed between him and J. W. Brannin that the latter should sign the firm-name to the note when J. W. Brannin alone was interested in the transaction; denies all fraud; and asks that the petition be dismissed.

VOL. VIII.—41

By an amended answer he made the records of the action on the note and the suit in equity of appellant with his temporary injunction, and the judgments in each of these cases, parts of his pleadings, and pleaded said judgments in bar of the relief sought in this suit.

By agreement of the parties extracts of the suit in equity in the Louisville Chancery Court of Martha A. Brannin, administratrix of J. W. Brannin, against appellee were read as evidence in this case. In her petition in that case the administratrix alleges that her husband, the intestate, many years before his death, engaged in the mercantile business in Newcastle, in partnership with D. Brannin, W. S. Pryor, and Berry Ellis, under the firm-name of Brannin, Pryor & Co.; that said partnership had long since been dissolved, and at the time of the dissolution the firm owed Griffin Kelly, the appellee; that by an arrangement with the other members of the firm, all of whom are living, her late husband was induced to assume the debt to Kelly, and thereupon executed his note, bearing date 1st of December, 1860, with D. Brannin and W. S. Pryor as his sureties. The debt was then $1,419.84. That G. Kelly assigned said note to Joseph Kelly, who instituted suit thereon against her, and on the 11th of June, 1866, she paid Joseph Kelly the amount of said note, with its interest and the costs of the suit. That said firm, very soon after it was formed, commenced borrowing money from said G. Kelly at an usurious rate of interest, sometimes at twelve per cent. per annum and sometimes at ten; that in 1851-2-3 they had borrowed of him eight hundred dollars, on which they paid an interest of not less than ten per cent. per annum; that they kept the money about three years, and the usurious interest amounted to seventy-five dollars; and from 1854 till the 3d of March, 1857, the firm paid him usurious interest on borrowed money amounting to two hundred and forty dollars, besides the seventy-five dollars previously paid, and on the last-named day

executed to Kelly their note for the sum of $1,387.74; and on the 6th of December, 1858, paid him on the last-named note the sum of $230.70; that he very soon afterward brought an action on that note, and on the 9th of April, 1859, recovered judgment thereon; that the defendants replevied the debt, and subsequently arranged it by paying him, on the 1st of December, 1860, $322.68, and then executed their note to him for $1,419.84, due 1st of June, 1861, the obligors standing on that note as they had stood on the first one; that this last note embraced $651.14 of usury, and when she paid off said debt, 8th of June, 1866, she paid Kelly $847.40 of usurious interest. That the note for $1,419.84 was assigned to Joseph Kelly to avoid the defense of usury, both of them well knowing the amount of usury embraced in it; that the latter paid no consideration for said assignments, but acted as the agent merely of the other to collect the debt; that her late husband, having assumed said debt for the firm, and having paid all the usury, or she having paid it with the assets of his estate, she alone had the right to reclaim it, and prayed judgment accordingly.

To that suit Kelly made rather an extended answer, and after admitting the death of plaintiff's husband, the existence of the firm as described, and that he had at various times loaned it money at interest after the rate of ten per cent. per annum, says he neither remembers the amounts nor dates of the various transactions of that character, but says that *none of them had any connection with the note described in the petition* assigned to Joseph Kelly; that the debts contracted by said firm for borrowed money had been settled and paid off more than five years before the commencement of said action; *that no part of the money borrowed of him at any time by the late firm was embraced in said note.* But says that B. H. Dale was indebted to him; that J. W. Brannin was indebted to Dale for land purchased of him, and agreed to become responsible to appellee for the debt Dale owed him, which is the

origin of the debt and note assigned to Joseph Kelly. No part of it was for borrowed money, but was for the debt Brannin owed Dale; and his recollection is and was that he held another note on J. W. Brannin, on the 1st of December, 1860, the time when the note was executed, which he afterward assigned to Joseph Kelly, which was included in the last-named note, and the obligors therein did agree to pay him ten per cent. on said debt, but that rate of interest was never paid. And after denying every charge of usury in the petition in every possible way and to the fullest extent on this particular demand, and pleading the statute of limitations as to any claim for usury paid by said firm, or any member of it, he again denies that the note referred to in the petition of Mrs. Brannin originated in the manner therein stated.

In his answer to the equity suit of appellant, enjoining him from proceeding on his judgment at law, after denying that he had given any directions to his attorneys or to the sheriff as to which of the defendants' property the execution should be levied on, and which one of them should be compelled to pay the money, appellee then says "he knows nothing of the business of the firm of Brannin, Pryor & Co., except that he loaned the money to them for which the note was executed, and that Berry Ellis told him it was right and would be paid; also, Pryor and Brannin told him the same thing; knows nothing of the fraud in plaintiff's petition asserted, and denies the same so far as it is applicable to him and his attorneys. He says he should not be prevented from collecting his money because of the difficulty with the firm."

The statement of W. S. Pryor was taken and admitted by the parties as his deposition, which is to the effect that when appellee presented the note to appellant and himself they both protested that the firm did not owe the debt, that it owed him only a small amount, and the books showed no such indebtedness as the one claimed; and Kelly replied that

Brannin got the money for the firm, and it was a just debt; that we confided in the assurance of Kelly that the firm owed the money, and that it was a just debt, and he and appellant on that account made no defense to the action brought against them on the note, but permitted judgment to go by default, and never knew anything to the contrary until 1866, long after the money had been paid, when Mr. Matthews told him that J. W. Brannin had borrowed the money to pay a debt he owed Dale for land. After Matthews gave him this information he saw appellee and asked him if this was true, and he replied it was, that the money was not borrowed for the firm, and the firm never owed it, but that Brannin borrowed the money to pay Dale a debt he owed him, and he did not let the witness and appellant know it because he wanted to secure himself first and his friends afterward, and always intended to let them know it when he was fully secured; and in reply to a question of appellee to him he said Dale and Smith, who was Dale's surety for the debt, and Brannin were all then solvent and good for the amount. This last statement of the witness complicates the conduct of the appellee and renders it more inexplicable.

Even if the communications which Mr. Riley proves were made by Kelly to him when he drew his answer in the suit of Brannin's administratrix against him were competent, these communications fail to relieve appellee from the dilemma; they are inconsistent with both of his answers in the suits referred to, and totally irreconcilable with the statements made to Pryor and with those contained in his answer in this case. If, for the accommodation of Brannin and Dale, he had been disposed to have changed his debtor and taken Brannin's obligation for his debt on Dale, which was well secured, he could have done so without any risk, for Brannin, as the evidence shows, was good for it; and besides, the debt he owed Dale was for land on which doubtless a lien existed therefor;

that lien would have resulted to appellee by substituting Brannin as his debtor in place of Dale, and in that way, if he had taken the note of the real and proper debtor, he would have been as safe as with the name of the firm. Moreover, by the statement he made to Pryor and appellant, that the debt was for borrowed money by their firm, they were induced to desist from further prosecuting their inquiry to ascertain who owed the debt, and when sued by appellee for it, deceived by his statements, permitted judgment to go by default against them, which they could have prevented and would have defeated but for his statements to them, which he himself has since contradicted by his declarations to others, and his answer, sworn to by himself, in a judicial proceeding against him.

In this way he compelled appellant to pay a considerable amount of money, not one dollar of which he was morally, legally, or honorably bound to pay; and then, after getting the money, withheld facts which he knew would have enabled appellant to recover the money which he had thus wrongfully forced him to pay from the man who owed it until after his death, perhaps insolvency, and after time had barred him of any remedy against the estate of the deceased debtor, although he told Pryor he intended to communicate to them the facts when he was *secure;* but that he was for himself first and his friend next.

What motive led appellee into this perilous labyrinth is not explained by the evidence; and while conjecture can not be wholly repressed, the foundation may not be sufficient for judicial expression. But be the motive what it may, it is clearly established by the evidence that appellant trusted to the statement of appellee as to his liability for the debt; that the representations made to him by appellee were delusive, as he has subsequently shown, and appellant was deceived and injured by them. It is an old and familiar rule in equity

that if one individual makes a misrepresentation to another in a matter of interest, knowing it at the time to be untrue, and the one to whom it is made confides in and acts upon it, the one guilty of the misrepresentation shall make good the injury which results to the party deceived.

This, as we understand it, is not a suit to obtain a new trial of the ordinary action upon the note. If it were, the remedy is barred under sec. 373 of the Civil Code; but it is a suit to recover back money which appellant has been forced by the judgment of a court of competent jurisdiction to pay to appellee *without consideration,* and which in good conscience and morality he can not keep.

This suit was brought within one year after the alleged fraud was discovered, and within less than ten years after it was perpetrated. What extraneous facts are relied upon to defeat the relief sought? It is said in the ingenious argument of appellee's counsel that the grounds for relief in the petition are, in substance, nothing more than that appellee, by a false statement contained in his answer in the injunction suit, had sustained a judgment against the firm of Brannin, Pryor & Co. to which he was not entitled, and which he insists is not sufficient grounds for the relief sought, and relies on Brunk v. Means, &c. (11 B. Mon. 214) as sustaining his position. This court said in that case:

"The only fraud with which Brunk is charged, in the procurement of the judgment in the previous suit, consists in the false statements contained in his answer. Something more is necessary to constitute a decree fraudulent—that is, a decree that has been obtained by fraud—than false allegations in the pleadings regularly filed in the cause. Neither party relies upon the statements made in the pleadings by his antagonist, but so far as he is able evinces their falsity, and repels them by proof. The presumption can not be indulged that he confides in such statements, particularly as it is incumbent on him

to disprove them so far as they conflict with his interest. When a party, by some act or declaration out of the record, lulls his opponent into a false security, or by any other means deceives him, and thereby *obtains a judgment* or decree to his prejudice, the judgment or decree thus obtained *is fraudulent*, and may be impeached upon that ground."

Is not this paragraph, when the whole of it is examined, an authority against appellee? Did he not deceive appellant before judgment was rendered by stating to him that the debt was the debt of his firm, and he was bound for it; and, trusting to that declaration, was the judgment not obtained against him, when he could have defeated it if the facts had not been misrepresented?

In West v. Kirby (4 J. J. Marshall, 56) this court held that money fraudulently coerced by judgment, and paid after being replevied, could be recovered in equity without awarding a new trial of the common law action, or setting aside the judgment therein.

From what appeared in the case at the time the judgment was rendered it was legal, but the want of consideration in the note, and the conduct of appellee manifested since the judgment was rendered, leave no escape for him. He must restore the money.

Wherefore the judgment must be reversed, and the cause remanded with directions to render judgment according to the principles of this opinion, and for further proceedings consistent herewith.